UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re WIRECARD AG SECURITIES LITIGATION | ) ) ) ) | Civ. Action No. 2:20-cv-03326-AB<br><br>CLASS ACTION |
| This Document Relates To:<br><br>ALL ACTIONS. | ) ) ) ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................2

III. ARGUMENT .........................................................................................................5

    A. Discovery Is Necessary to Preserve Evidence Because WNA Is Not Obligated to Preserve Documents and Its Acquisition and Defendants' Insolvency Mean Relevant Evidence Is Likely to Be Lost ....................................6

    B. Plaintiffs Will Suffer Undue Prejudice if the Stay Is Not Lifted Because the Requested Discovery May Be Lost Forever ........................................................8

    C. Plaintiffs' Requests for Discovery Are Particularized and Identify a Finite Universe of Documents.................................................................................10

IV. DOCUMENTS SOUGHT ....................................................................................11

V. CONCLUSION....................................................................................................12

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Action Mfg. Co. v. Simon Wrecking Co.*,
  375 F. Supp. 2d 411 (E.D. Pa. 2005) ...................................................................................9

*Applied Telematics, Inc. v. Sprint Commc'ns Co., L.P.*,
  1996 WL 33405972 (E.D. Pa. Sept. 17, 1996) .........................................................7

*Gruber v. Gilbertson*,
  2017 WL 3891701 (S.D.N.Y. Sept. 5, 2017)...................................................5, 6, 7

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999)...............................................................................5

*In re Baan Co. Sec. Litig.*,
  81 F. Supp. 2d 75 (D.D.C. 2000) ........................................................................9

*In re Bank of Am. Corp. Sec., Derivative, & Empl.*
  *Ret. Income Sec. Act (ERISA) Litig.*,
  2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) ..........................................................6

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
  220 F.R.D. 246 (D. Md. 2004)........................................................................7, 8

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 37962
  (D.N.J. Feb. 15, 2005)...................................................................................10

*In re WorldCom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301 (S.D.N.Y. 2002).................................................................5, 10

*Ret. Sys. v. Gen. Motors Co.*,
  2015 WL 1565462 (E.D. Mich. Apr. 8, 2015).........................................................8

*Winer Family Tr. v. Queen*,
  2004 WL 350181 (E.D. Pa. Feb. 6, 2004) ......................................................5, 6, 8, 10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(3)(B) ............................................................................................2, 5

## I.    INTRODUCTION

Lead Plaintiffs Thanh Sam and Lawrence Gallagher ("Plaintiffs") hereby respectfully move the Court for an order partially lifting the Private Securities Litigation Reform Act of 1995's ("PSLRA") mandatory discovery stay so that Plaintiffs may secure document discovery from Defendant Wirecard's[1] wholly owned subsidiary, Wirecard North America, Inc. ("WNA"). Wirecard very recently sold WNA (including all of its hard and soft assets) to another company, Syncapay, Inc. ("Syncapay") as part of its dramatic insolvency and liquidation efforts.  Since being sold off, WNA has quickly moved to sever all ties with Wirecard, including immediately changing its name and removing references to Wirecard from its website.  Importantly, there is no assurance that Wirecard (which is undergoing insolvency proceedings in Germany) or WNA have acted to preserve relevant information.  This presents a very credible risk that documents and other evidence directly relevant to Plaintiffs' claims will be lost or destroyed unless the PSLRA stay is lifted.

In what has been described as the largest fraud in German postwar history, Wirecard, a payment processing company, declared bankruptcy in June 2020 after admitting that more than $2 billion dollars it purported to have safely deposited in a bank in the Philippines simply did not exist.  Following this stunning revelation, several Wirecard executives, including its former CEO, were arrested by German authorities and charged with fraud.  WNA, Wirecard's former subsidiary, is located in this District.  Plaintiffs believe WNA is likely to have documents within its control, whether on paper or in electronic form, directly relevant to Plaintiffs' claims.  For example, from August 17, 2015 through June 24, 2020, inclusive (the "Class Period"), Defendants falsely

---

[1]    "Defendants" are Wirecard AG ("Wirecard"), Markus Braun, Jan Marsalek, Burkhard Ley, Alexander von Knoop, Susanne Steidl, Wulf Matthias and Ernst & Young GmbH Wirtschaftspruefungsgesellschaft ("E&Y").

- 1 -

represented WNA's financial performance to hide from investors the true extent to which Wirecard relied on revenue from three opaque companies in Asia which supposedly processed payments on Wirecard's behalf. However, it has been recently disclosed that in truth, WNA lost money every year beginning in 2017, and much of the "revenue" generated from the Asian business partners was fictitious. In addition to documents concerning its true results, WNA would also have documents concerning its relationship with Defendants that are directly relevant to personal jurisdiction, which Defendants intend to contest. Moreover, WNA would also have documents relating to the audit performed by E&Y that failed to detect Wirecard's fraud for years.

This action is stayed while service is accomplished under the Hague Convention. Therefore, a motion to dismiss will likely not be decided until well into next year. In the meantime, relevant evidence in WNA's possession may likely be lost for good without an order lifting the stay to obtain documents from WNA. Accordingly, the Court should partially lift the stay so Plaintiffs may pursue discovery from WNA.

## II.    FACTUAL BACKGROUND

This action is brought on behalf of investors who purchased Wirecard securities during the Class Period. The operative complaint (ECF No. 1) ("Complaint") alleges that Wirecard, a now defunct and bankrupt payments processing company, and certain of its officers and directors violated the Securities Exchange Act of 1934[2] by issuing materially false and misleading financial statements in connection with Defendants' global, multiyear accounting fraud which has been called the "'Enron of Germany'" and "the largest corporate scandal in Germany since World War

---

[2]    Plaintiffs also bring claims against E&Y for its failure to audit Wirecard in accordance with applicable auditing principles.

- 2 -

II." Exs. 1-2.[3] For years, Defendants claimed to have hundreds of millions of dollars in annual earnings, including from WNA and its other subsidiaries and certain third parties in Asia who supposedly processed payments on Wirecard's behalf. In fact, just this summer, investors learned that Wirecard's operations were a sham and that the €1.9 billion in profits Defendants claimed were safely in a bank in the Philippines, did not exist. Defendants' false statements and vast accounting fraud stretched far and wide, including to this District, where WNA is headquartered.

In 2016, to enter the North American market, Wirecard purchased Citi Prepaid Card Services and renamed it WNA. Ex. 3. Wirecard touted WNA as a positive step for global expansion and a "major impetus for growth." Ex. 4 at 139. The Company also highlighted WNA's global reach by explaining that several of its other subsidiaries, including in Singapore and the Philippines, "will also be used for activities connected to the acquisition of Citi Prepaid Services in the USA." Ex. 5 at 57-58; Ex. 4 at 185 (same).

In the years following the WNA acquisition, Defendants represented to investors in the United States and around the world that WNA, its United States-based subsidiary, was in good financial health. *See* Ex. 6 at 19 (reporting €32.8 million in pre-tax quarterly earnings for the Americas and Africa combined); Ex. 7 at 132 (reporting €109.1 million in revenues and €20.7 million in pre-tax earnings from the United States for 2017). In fact, like the rest of Wirecard's business, WNA was not financially sound.

In April 2019, the Financial Times reported that nearly half of Wirecard's worldwide revenue and approximately 95% of its profits were derived from just three opaque third-party partners in Singapore, the Philippines and Dubai that processed payments on Wirecard's behalf.

---

[3]    All "Ex. __ " citations herein are to the Declaration of John H. George, filed concurrently herewith.

Ex. 8.  Defendants specifically and vehemently denied the allegations.  For example, when asked about the article on an investor conference call, CEO Markus Braun claimed "this is simply not true," implying that substantial revenue and profit came from WNA and Wirecard's other businesses.  Ex. 9 at 6.

Over the following months, more articles on Wirecard's business with the third parties prompted the Company to hire KPMG AG Wirtschaftsprüfungsgesellschaft ("KPMG") to conduct an investigation into the allegations (which Defendants continued to deny).  *See* Ex. 10.  KPMG's audit revealed numerous internal controls and accounting improprieties and could not verify the existence of Wirecard's claimed bank deposits in the Philippines.  *See* Ex. 11.  Defendants could not keep their fraud going for much longer and on June 22, 2020, Wirecard issued a press release admitting that "there is a prevailing likelihood that the bank trust account balances in the amount of 1.9 billion EUR do not exist." ¶66.[4]  That same evening, CEO Markus Braun was arrested and authorities were searching for Wirecard's former Chief Financial Officer, who had reportedly absconded to Russia.  Ex. 12.  Two days later, on June 25, 2020, the Company filed for bankruptcy. Ex. 13.

On July 5, 2020, directly contrary to Wirecard's assertions that it had substantial revenue and profit from its own businesses, including WNA, the Financial Times reported that an undisclosed appendix to the KPMG report showed that the "core business in Europe and the Americas has been lossmaking for years."  Ex. 14.  In fact, ***WNA had not generated a profit for Wirecard since 2016***. *Id.*

Immediately following Wirecard's bankruptcy, WNA announced that it was for sale.  Ex. 16.  On October 22, 2020, Syncapay, a Texas-based company, agreed to acquire WNA and

---

[4]    All "¶_" references herein are to the Complaint.

- 4 -

combine it with daVinci Payments ("daVinci"), another payments company.  Exs. 15-16.  Though still subject to approval by regulatory authorities, after announcing the acquisition, WNA immediately changed its name to North Lane Technologies, Inc. ("North Lane") and rebranded its website, which removed any mention of the name "Wirecard" from its corporate history.  Ex. 17; *see also* Ex. 18.  ("Wirecard North America sold to Syncapay as break-up progresses").

Plaintiffs bring this Motion amidst this quickly changing landscape to avoid losing documents necessary to litigate their claims.

## III.    ARGUMENT

Pursuant to the PSLRA, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss."  15 U.S.C. §78u-4(3)(B).  "The PSLRA discovery stay, however, is not absolute."  *Gruber v. Gilbertson*, 2017 WL 3891701, at *2 (S.D.N.Y. Sept. 5, 2017).[5]  The stay may be lifted if the movant shows either that discovery is "necessary to preserve evidence" or "to prevent undue prejudice."  15 U.S.C. §78u-4(3)(B).  Further, the request for discovery must be "particularized."  *Id.*; *see Winer Family Tr. v. Queen*, 2004 WL 350181, at *1 (E.D. Pa. Feb. 6, 2004) ("Even where a movant demonstrates that discovery is necessary to either preserve evidence or prevent undue prejudice . . . the movant [must have] made 'particularized' requests for discovery.").  When assessing whether to lift the stay, courts are mindful that the automatic discovery stay "reflects the PSLRA's general purpose of restricting abuses in securities class action litigation, including the abuse of the discovery process to coerce settlement."  *Winer*, 2004 WL 350181, at *1 (citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 531 (3d Cir. 1999)).[6]

---

[5]    All citations and footnotes omitted and emphasis added unless otherwise indicated.

[6]    "The legislative history of the PSLRA indicates that Congress enacted the discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions" or to prevent fishing expeditions. *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002). This case is in no way frivolous.  Wirecard has filed for bankruptcy after admitting to having

- 5 -

Here, lifting the stay for the limited purpose of securing discovery from WNA is warranted and consistent with the PSLRA's purpose. *See Gruber*, 2017 WL 3891701, at *1, *4 (lifting PSLRA stay for "limited purpose" of seeking production from third party); *In re Bank of Am. Corp. Sec., Derivative, & Empl. Ret. Income Sec. Act (ERISA) Litig.*, 2009 WL 4796169, at *1 (S.D.N.Y. Nov. 16, 2009) ("'[C]ourts have modified the discovery stay in securities class actions when doing so would not frustrate Congress's purposes in enacting the PSLRA.'"). In addition, Plaintiffs' requests are particularized and directly relevant to the claims alleged and jurisdiction over Defendants.

Because a motion to dismiss will likely not be decided until next year – if Defendants even file a motion to dismiss – WNA and its assets, files and records are certain to be integrated into Syncapay and likely lost or destroyed as irrelevant to continuing operations. Plaintiffs therefore risk losing necessary evidence that is currently within this District. Furthermore, due to WNA's new status as a non-party and Wirecard's insolvency, that risk is even higher. As detailed below, Plaintiffs face undue prejudice if the discovery stay is not partially lifted because the documents are highly relevant and are unlikely to be around for much longer given WNA's acquisition and immediate steps to erase all remnants of its link to its scandal-plagued former owner.

### A.     Discovery Is Necessary to Preserve Evidence Because WNA Is Not Obligated to Preserve Documents and Its Acquisition and Defendants' Insolvency Mean Relevant Evidence Is Likely to Be Lost

"A party alleging that discovery is necessary to preserve evidence is required to make a specific showing that 'the loss of evidence is imminent as opposed to merely speculative.'" *Winer*, 2004 WL 350181, at *2. Here, the loss of evidence is anything but speculative because, as WNA's

---

fabricated almost €2 billion in cash. Defendants are in jail, fleeing from justice, and/or are being investigated by German prosecutors.

- 6 -

actions to distance itself from Wirecard have shown, WNA is working quickly to shake off its associations with its former parent, which admitted to one of Europe's largest-ever frauds and is now bankrupt.

Very recently, on October 22, 2020, Wirecard sold WNA. Ex. 15. Immediately upon being acquired by Syncapay and combined with daVinci, WNA began operating under a different name, North Lane, and has launched a new website that makes no mention of its past as WNA or Wirecard. Exs. 15, 17. Since the fraud was revealed, WNA has claimed that it was "substantially autonomous" from its parent. Ex. 16. This acquisition, combination and quick action to distance itself from Defendants illustrates that Plaintiffs are "[f]aced with a shifting corporate landscape and concerns about evidentiary loss that are by no means 'wholly speculative.'" *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004).

Further, WNA, which as of its sale to Syncapay is no longer a part of Wirecard, currently is not named as a party to this action. *See* ¶¶6-19. "While 'parties to the action are specifically directed to preserve all relevant documents during the pendency of the stay, this statutory command does not apply to nonparties.'" *Gruber*, 2017 WL 3891701, at *4. As such, there is a significantly increased "'risk that evidence may be lost'" if the discovery stay is not lifted. *Id.*; *see also Applied Telematics, Inc. v. Sprint Commc'ns Co., L.P.*, 1996 WL 33405972, at *1 (E.D. Pa. Sept. 17, 1996) (highlighting the risk of electronically stored evidence to be deleted).

Additionally, Wirecard's insolvency threatens Plaintiffs' ability to access the requested documents from the parent company. Wirecard "has already divested itself of key subsidiaries, and it plans to divest itself of more." *Royal*, 220 F.R.D. at 251; Ex. 14 (Noting that: "A sale of Wirecard's subsidiaries needs to happen within weeks or they will lose any remaining value, said people familiar with the matter."). Such "divestitures create a reasonable concern that documents

may be lost despite [defendant's] best efforts to preserve them . . . add[ing] urgency to the discovery timetable." *Royal*, 220 F.R.D. at 251.

### B.    Plaintiffs Will Suffer Undue Prejudice if the Stay Is Not Lifted Because the Requested Discovery May Be Lost Forever

"A party alleging that discovery is necessary to prevent undue prejudice must specifically identify 'improper or unfair treatment amounting to something less than irreparable harm.'" *Winer*, 2004 WL 350181, at *2; *see N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 2015 WL 1565462, at *3 (E.D. Mich. Apr. 8, 2015) ("District courts have construed 'undue prejudice', as used in the PSLRA, to mean . . . "'something less than irreparable harm.'""). Plaintiffs will suffer undue prejudice if this Court does not lift the discovery stay to allow them to seek discovery from WNA.

Plaintiffs risk losing documents concerning the true state of WNA's financial position during the Class Period, which bears on the allegations regarding Defendants' improper accounting of the entire business' revenues. *Royal*, 220 F.R.D. at 251 (finding undue prejudice where discovery sought included "critical evidence in the case"). While it appears from the publicly available information that Defendants generated the majority of their fictitious revenue and profit from subsidiaries and third-party partners in Asia, they simultaneously touted Wirecard's United States operations to paint an image of business-wide success and to minimize the importance of questionable accounting with Asian subsidiaries and third-party partners. *See* Ex. 6 at 19; Ex. 7 at 132. As such, despite WNA's representation that it was "substantially autonomous" from the parent company, WNA's financials and operations nonetheless played a role in the fraud at issue.

Plaintiffs also risk losing critical documents demonstrating the link between WNA and Wirecard's activities in Asia, which is where much of its fictitious revenue supposedly originated. Specifically, in 2017, Wirecard noted that companies in Singapore, the Philippines and India – all

- 8 -

of which have been connected to its fraudulent accounting and other improprieties – "will also be used for activities connected to" WNA.  Ex. 5 at 57-58; Ex. 4 at 185 (same).

Finally, without lifting the discovery stay, Plaintiffs will likely lose the ability to obtain documents concerning the relationship between Defendants and WNA that are critical to establishing this Court's personal jurisdiction over Defendants.  As Defendants have made clear, they "dispute Plaintiff[s'] assertion that 'Defendants are subject to personal jurisdiction in the Eastern District of Pennsylvania, and venue is proper there.'"  *DalPoggetto v. Wirecard AG*, No. 2:20-cv-05017-AB, Defendants' Statement of Non-opposition to Motion to Transfer (E.D. Pa. Oct. 8, 2020).  When examining whether a foreign company, like Wirecard, has sufficient contacts within the United States such that personal jurisdiction exists, courts look to the nature of the company's relationship with United States subsidiaries and "'whether the subsidiary corporation played any part in the transactions at issue.'"  *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 424 (E.D. Pa. 2005).

Here, WNA is in possession of documents concerning, among other things, whether the parent and subsidiary shared common directors and officers, WNA's finances showing whether WNA was undercapitalized, the extent to which the parent company controlled the subsidiary's internal affairs or daily operations, and the connection between WNA and Wirecard's business in Asia.  *See id.* at 424-26 (identifying factors relevant to establishing personal jurisdiction through a parent-subsidiary relationship).

If the stay is not lifted and WNA purges these documents, which appears likely, Plaintiffs will lose the opportunity to adequately challenge Defendants' assertion that the Court lacks jurisdiction and will, therefore, be severely prejudiced.  *See In re Baan Co. Sec. Litig.*, 81 F. Supp. 2d 75, 83-84 (D.D.C. 2000) (finding PSLRA stay does not block jurisdictional discovery and

noting "[l]imited discovery must be permitted to prevent the unfairness of a party's being denied access to information which his opponent possesses and which, if produced, would establish the legitimacy of his being before the court"). In short, without partially lifting the stay, Plaintiffs will be unfairly prejudiced in proving their claims and showing that Defendants are properly subject to this Court's jurisdiction.

**C.    Plaintiffs' Requests for Discovery Are Particularized and Identify a Finite Universe of Documents**

A request to lift the stay is particularized where the moving party has "'adequately specif[ied] the target of the requested discovery and the types of information needed.'" *Winer*, 2004 WL 350181, at *2. Plaintiffs' discovery requests to WNA specifically identify and target the documents and information sought and easily exceed the particularity requirement.

Here, Plaintiffs seek specifically defined categories of documents: documents concerning WNA's financial results during the Class Period; WNA's relationship with or connection to Wirecard's Asian subsidiaries and third-party partners; documents produced to German or other government authorities investigating Wirecard[7]; documents concerning audits of WNA and Wirecard; and documents concerning WNA's relationship with Wirecard. *See infra* §I.V. These categories are discrete, finite, and are directly relevant to the claims against Defendants. *See In re Royal Dutch/Shell Transp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 37962, at *4 (D.N.J. Feb. 15, 2005)

---

[7]   Lifting the PSLRA discovery stay is appropriate where the documents sought have already been produced to the government in investigations concerning the same alleged fraud. *See WorldCom*, 234 F. Supp. 2d at 305-06 ("[Plaintiff] would be prejudiced by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape. It would essentially be the only major interested party in the criminal and civil proceedings against [defendant] without access to documents that currently form the core of those proceedings.").

(PSLRA discovery stay "partially lifted to permit a limited production of numerous categories of documents").

## IV.    DOCUMENTS SOUGHT

Plaintiffs ask the Court to partially lift the PSLRA stay to permit production of the following:

1.    All documents concerning WNA's financial results, including all financial statements, balance sheets and cash flow statements, and all documents concerning profit and loss, for the time period January 1, 2015 to the present;

2.    All documents produced to any government authority, in the United States or abroad, as part of any investigation of Wirecard's accounting or financial results;

3.    All documents concerning WNA's activities or operations in Asia, including all documents relating to Wirecard's subsidiaries located in Asia or Wirecard's third-party partners in Singapore, the Philippines or Dubai;

4.    All documents concerning audits of WNA or Wirecard, including all audit workpapers, communications with or about E&Y or any of its affiliates (including Ernst & Young LLP), and documents produced to or reports received from E&Y, KPMG, or any other auditor in connection with their audits of Wirecard;

5.    All documents concerning the investigation conducted by KPMG that resulted in the report dated April 27, 2020, including all requests for documents, all documents provided to KPMG or its affiliates, agents or employees and all communications concerning KPMG or its investigation;

6.    All documents concerning WNA's financial relationship with Wirecard, including documents relating to loans or other financial obligations between WNA and Wirecard, documents

- 11 -

relating to dividends or other payments between Wirecard and WNA and documents relating to contractual obligations between Wirecard and WNA;

7.      All documents concerning Wirecard's oversight or control over WNA's operations;

8.      All documents concerning WNA's corporate structure and governance, including organizational charts, job descriptions and titles, bylaws and charters, and documents concerning the identities and elections of members of WNA's Board of Directors; and

9.      All communications to or from WNA (including its current or former employees), and Markus Braun, Jan Marsalek, Burkhard Ley, Alexander von Knoop, Susanne Steidl or Wulf Matthias.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion to partially lift the PSLRA discovery stay and seek discovery from WNA or its successor company.

DATED:  November 6, 2020                    Respectfully submitted,

                                            SAXTON & STUMP
                                            LAWRENCE F. STENGEL (P.A. Bar # 32809)


                                                s/ Lawrence F. Stengel
                                            LAWRENCE F. STENGEL

                                            280 Granite Run Drive, Suite 300
                                            Lancaster, PA  17601
                                            Telephone:  717/556-1000
                                            717/441-3810 (fax)
                                            lfs@saxtonstump.com

                                            *Local Counsel for Lead Plaintiffs*

- 12 -

Cases\4822-0352-3536.v2-11/6/20

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
JOHN H. GEORGE
HADIYA K. DESHMUKH
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jgeorge@rgrdlaw.com
hdeshmukh@rgrdlaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
DANIELLE SMITH
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
danielles@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVEN W. BERMAN
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com

*Lead Counsel for Lead Plaintiffs Thanh Sam and
Lawrence Gallagher*

BRONSTEIN, GEWIRTZ & GROSSMAN,
LLC
PERETZ BRONSTEIN
60 East 42nd Street, Suite 4600
New York, NY  10165
Telephone:  212/697-6484
212/697-7296 (fax)
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Thanh Sam*

- 13 -

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on November 6, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Lawrence F. Stengel
LAWRENCE F. STENGEL
SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)
Email: lfs@saxtonstump.com

Cases\4822-0352-3536.v2-11/6/20

# Mailing Information for a Case 2:20-cv-03326-AB BROWN v. WIRECARD AG et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **LEE ALBERT**
  lalbert@glancylaw.com,lee-albert-5832@ecf.pacerpro.com,info@glancylaw.com

- **PERETZ BRONSTEIN**
  peretz@bgandg.com

- **VINCENT A COPPOLA**
  vcoppola@pribanic.com,gregory@pribanic.com

- **HADIYA K. DESHMUKH**
  hdeshmukh@rgrdlaw.com,hdeshmukh@ecf.courtdrive.com

- **JOHN H. GEORGE**
  jgeorge@rgrdlaw.com,jgeorge@ecf.courtdrive.com,smorris@ecf.courtdrive.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **REED KATHREIN**
  reed@hbsslaw.com,lisal@hbsslaw.com,sf_filings@hbsslaw.com

- **JEFFREY L. KODROFF**
  jkodroff@srkattorneys.com

- **WILLIAM S. NORTON**
  bnorton@motleyrice.com,mhickey@motleyrice.com

- **MICHAEL J. QUIRK**
  mquirk@motleyrice.com,hfonseca@motleyrice.com,lmandara@motleyrice.com

- **DANIELLE SMITH**
  danielles@hbsslaw.com,sf_filings@hbsslaw.com

- **LAWRENCE F. STENGEL**
  lfs@saxtonstump.com,gas@saxtonstump.com

- **DAVID A. STRAITE**
  dstraite@kaplanfox.com,jgriffin@kaplanfox.com

- **SHAWN A. WILLIAMS**
  shawnw@rgrdlaw.com,smorris@rgrdlaw.com,e_file_sd@rgrdlaw.com,shawnw@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)