UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re WIRECARD AG SECURITIES LITIGATION | ) ) ) | Civ. Action No. 2:20-cv-03326-AB |
| | ) | CLASS ACTION |
| | ) | |
| This Document Relates To: | ) ) | SUBMISSION IN FURTHER SUPPORT OF #49 LEAD PLAINTIFFS' MOTION TO |
| ALL ACTIONS. | ) ) | PARTIALLY LIFT THE PSLRA DISCOVERY STAY |
| | ) | |

4818-5537-7620.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   RELEVANT PROCEDURAL BACKGROUND ...............................................2

III.  ARGUMENT........................................................................................................3

     A.    Plaintiffs Have Adequately Shown that the Circumstances Warrant Lifting the PSLRA Discovery Stay.....................................................................3

     B.    North Lane Failed to Timely Respond and the North Lane Letter Was Procedurally Improper ..................................................................................4

     C.    This Action Is Not the Kind of Frivolous Action Contemplated by the PSLRA Discovery Stay..................................................................................5

     D.    The North Lane Letter Supports a Showing of Both Undue Prejudice and that Discovery Is Necessary to Preserve Evidence ....................................7

          1.    Immediate Lift of the Discovery Stay Is Warranted to Preserve Documents During WNA's Sale to Syncapay.............................................7

          2.    The Retention Policy Suggests Critical Financial and Legal Documents May Have Already Been Destroyed or that Destruction Is Imminent .............................................................................................9

IV.   CONCLUSION...................................................................................................11

4818-5537-7620.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Green v. Cosby*,
314 F.R.D. 164 (E.D. Pa. 2016)..................................................................................................6

*Gruber v. Gilbertson*,
2017 WL 3891701 (S.D.N.Y. Sept. 5, 2017)...............................................................................6

*In re Massey Energy Co. Sec. Litig.*,
2011 U.S. Dist. LEXIS 111175 (S.D. W. Va. Sep. 28, 2011) ..........................................6, 8, 9

*In re Mushroom Direct Purchaser Antitrust Litig.*,
2012 U.S. Dist. LEXIS 204641 (E.D. Pa. Aug. 1, 2012)............................................................8

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
220 F.R.D. 246 (D. Md. 2004).............................................................................................5, 6, 7

*In re WorldCom, Inc. Sec. Litig.*,
234 F. Supp. 2d 301 (S.D.N.Y. 2002)........................................................................................5

*Winer Family Tr. v. Queen*,
2004 WL 350181 (E.D. Pa. Feb. 6, 2004) ...............................................................................11

*Zubulake v. UBS Warburg LLC*,
220 F.R.D. 212 (S.D.N.Y. 2003) ...............................................................................................8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(b)(3)(B)........................................................................................................................5, 7

Local Rules of Civil Procedure
Rule 7.1 .......................................................................................................................................1
Rule 7.1(c)................................................................................................................................2, 4

4818-5537-7620.v1

I.    **INTRODUCTION**

Lead Plaintiffs' Thanh Sam and Lawrence Gallagher ("Plaintiffs") motion to partially lift

the Private Securities Litigation Reform Act of 1995 ("PSLRA") discovery stay (ECF No. 49)

("Motion") in order to seek discovery from Wirecard North America, Inc. ("WNA") (n/k/a North

Lane Technologies, Inc. ("North Lane")) should be granted.  Pursuant to Rule 7.1 of the Local

Rules of Civil Procedure ("Local Rules" or "L.R."), North Lane's response was due on November

25, 2020.  Ignoring Plaintiffs' offer to stipulate to a reasonable briefing schedule, on December

11, 2020, North Lane emailed a letter (Ex. 19[1] (the "North Lane Letter")) directly to Your Honor's

chambers without filing it on ECF – contrary to the Court's Policies and Procedures ("Policies and

Procedures") requiring that such oppositions, even if in letter form, be filed on ECF.  Ex. 20.  Not

only was North Lane's response procedurally improper, it provides no legitimate basis to deny

Plaintiffs' Motion.  The documents attached to the North Lane Letter, including North Lane's

Document Record Retention Policy and addendum (Ex. 19, Ex. B) ("Retention Policy" and

"Policy Addendum"), and Affidavit of Emily Williams (*id.*, Ex. C) ("Williams Affidavit") a human

resources representative, provide no basis to conclude that relevant documents have been and will

continue to be preserved.  To the contrary, the North Lane Letter only demonstrates the heightened

risk of losing documents amidst WNA's rebranding and further illustrates why discovery is

necessary at this time.

---

[1]    All "Ex. _" references herein are to the Declaration of John H. George in Support of Lead Plaintiffs' Motion to Partially Lift the PSLRA Discovery Stay (ECF No. 49-2) (Exs. 1-18), and the Declaration of John H. George in Support of Submission in Further Support of #49 Lead Plaintiffs' Motion to Partially Lift the PSLRA Discovery Stay (Exs. 19-29), filed concurrently herewith, unless otherwise indicated.

4818-5537-7620.v1

## II.    RELEVANT PROCEDURAL BACKGROUND

On November 10, 2020, Plaintiffs served their Motion on WNA.  Ex. 21.  On November 11, 2020, Plaintiffs served North Lane.  Ex. 22.  And on November 12, 2020, Plaintiffs served Syncapay, Inc. ("Syncapay").   Ex. 23.   Accordingly, North Lane's opposition was due on November 25, 2020.  *See* L.R. 7.1(c) ("[A]ny party opposing the motion shall serve a brief in opposition . . . within fourteen (14) days after service of the motion and supporting brief.").

On November 30, 2020, five days after the deadline for response, counsel for North Lane contacted Plaintiffs' counsel confirming North Lane's receipt of Plaintiffs' Motion and stated North Lane had a document retention policy.  Ex. 24.  In light of North Lane's document records retention policy, counsel for North Lane requested that Plaintiffs either withdraw the Motion or ask the Court to refrain from issuing any ruling on the Motion.  *Id.*  That same day, Plaintiffs' counsel informed counsel for North Lane that the deadline to respond had passed, but suggested North Lane file a formal response to Plaintiffs' Motion, otherwise Plaintiffs would ask the Court to grant the Motion based on North Lane's failure to respond.  Ex. 25 at 2.

On December 1, 2020, counsel for North Lane informed Plaintiffs' counsel that he was reviewing Plaintiffs' Motion and requested an extra week before Plaintiffs filed anything with the Court. Ex. 26 at 1.  North Lane expressed its intent to send a letter to the Court asking that it delay any ruling.  *Id.*  That same day, to ensure that North Lane had the opportunity to respond to Plaintiffs' Motion even though the deadline had passed, Plaintiffs' counsel offered to agree to a stipulation that set a briefing schedule for North Lane's opposition and Plaintiffs' subsequent reply, and requested that counsel for North Lane send Plaintiffs a draft.  Ex. 25 at 1.  Counsel for North Lane informed Plaintiffs' counsel that he would respond the next day.  Ex. 27 at 1.

On December 3, 2020, without agreeing to the offered stipulation, counsel for North Lane responded that his colleague would be taking over responsibility for responding to Plaintiffs' Motion and would be in touch shortly.  Ex. 28.

Counsel for North Lane did not contact Plaintiffs until December 11, 2020, just minutes before emailing the North Lane Letter opposing Plaintiffs' Motion to the Court.  Ex. 29; Ex. 20. North Lane did not file the letter on ECF.

The North Lane Letter attached three exhibits: (i) Plaintiffs' Motion; (ii) North Lane's Retention Policy and Policy Addendum; and (iii) the Williams Affidavit.  The North Lane Letter requested Plaintiffs' Motion be denied, asking "Your Honor allow the current discovery stay to remain in place, even absent formal motion practice."  Ex. 19 at 3.

## III.   ARGUMENT

### A.   Plaintiffs Have Adequately Shown that the Circumstances Warrant Lifting the PSLRA Discovery Stay

Plaintiffs request that the Court lift the PSLRA stay because of concerns regarding the loss of evidence during Wirecard AG's ("Wirecard") insolvency and related sale of WNA to Syncapay. As Plaintiffs explained in the Motion, the quickly changing corporate landscape raised more than speculative concerns of document destruction.  *See* Motion, §III.A.

Despite WNA's – now North Lane's – position that it is a separate entity from Wirecard, its rebranding does not change WNA's role in Wirecard's alleged multi-billion euro fraud, and without partially lifting the discovery stay, Plaintiffs will be unduly prejudiced by the loss of the highly critical documents.  First, Plaintiffs risk losing documents relating to WNA's financial performance.  Because Wirecard made representations about WNA's financials to obfuscate Wirecard's overall performance, WNA's own records of its financial results and projections are highly relevant to Plaintiffs' claims.  Second, Plaintiffs risk losing critical documents demonstrating the link between WNA and Wirecard's activities in Asia, which is where much of

- 3 -

Wirecard's fictitious revenue supposedly originated.  Ex. 5 at 57-58; Ex. 4 at 185.  Third, documents showing Wirecard's relationship with WNA are directly related to this Court's jurisdiction over Defendants.[2]  North Lane's insistence that it is separate from Wirecard only highlights the urgency of Plaintiffs' request.

In the Motion, Plaintiffs requested a limited, particularized set of documents that bear directly on their case.  *See* Motion, §IV.  North Lane does not contend that Plaintiffs' requests are not particularized and fails to show that Plaintiffs will not be prejudiced if the stay remains.  Accordingly, the PSLRA stay should be lifted.

### B.    North Lane Failed to Timely Respond and the North Lane Letter Was Procedurally Improper

As an initial matter, the Court need not entertain the North Lane Letter.  Pursuant to the Local Rules, "[i]n the absence of timely response, [a] motion may be granted as uncontested." L.R. 7.1(c).  When North Lane finally responded, it did so in a procedurally improper manner inconsistent with the Local Rules and this Court's Policies and Procedures.  While the Court permits a response to be filed as a letter instead of a formalized motion, "the letter must be designated as a motion on ECF."  Policies and Procedures, General Matters at No. 1; *see also id*., General Motions Practice at No. 1 ("[A]ll requests, except those that are urgent, must be filed as motions.").  Further, only "urgent administrative matters" may be sent via email correspondence. *Id*., General Matters at No. 1 ("Judge Brody permits correspondence by email and fax from counsel concerning urgent administrative matters.  Counsel must address all other matters by motion."). The North Lane Letter plainly opposes Plaintiffs' Motion and raises substantive arguments against

---

[2]    "Defendants" are Wirecard, Markus Braun, Jan Marsalek, Burkhard Ley, Alexander von Knoop,    Susanne    Steidl,    Wulf    Matthias    and    Ernst    &    Young    GmbH Wirtschaftspruefungsgesellschaft.

it.  As Plaintiffs made clear in their correspondence with counsel for North Lane, a filed opposition was required.

### C.    This Action Is Not the Kind of Frivolous Action Contemplated by the PSLRA Discovery Stay

The PSLRA discovery stay is designed to prevent the filing of frivolous lawsuits, seeking discovery of a sustainable claim not alleged in the complaint.  *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 249 (D. Md. 2004); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) (explaining legislative history).[3]  Courts, therefore, must evaluate the pertinent facts and circumstances including the merits of plaintiffs' allegations in determining whether to lift the discovery stay, pursuant to 15 U.S.C. §78u-4(b)(3)(B).  *Royal Ahold*, 220 F.R.D. at 251 (distinguishing the need to preserve evidence in meritorious cases as opposed to frivolous cases).

North Lane's attempt to distinguish the facts here from *Royal Ahold* falls flat.  Here, as in *Royal Ahold*, the facts strongly support lifting the stay.  In *Royal Ahold*, the foreign company defendant revealed severe accounting irregularities at its company and admitted "major missteps, if not actual fraud."  *Id.*  Here, Wirecard admitted to having fabricated almost €2 billion in cash, was forced to file for insolvency and is selling off its assets, such as WNA, to pay creditors.  *See* Exs. 12-14.  Further, many of the Wirecard's former executives (some of whom are Defendants here) are either in jail or fleeing from justice.  *See* Ex. 12.  As in *Royal Ahold*, where the divestiture of subsidiaries demonstrated the need to act quickly to preserve documents, the sale of WNA and its attempt to quickly put Wirecard and its scandal behind it shows the need to lift the stay.

North Lane's attempt to distinguish *Royal Ahold* based on North Lane's status as a non-party is also misguided because, to the contrary, courts recognize that "[w]hile 'parties to the action

---

[3]    All citations and footnotes omitted and emphasis added unless otherwise indicated.

are specifically directed to preserve all relevant documents during the pendency of the stay, this statutory command does not apply to nonparties.'  And because of that, [a non-party's] 'status as a non-party significantly increases the risk that evidence may be lost.'" *Gruber v. Gilbertson*, 2017 WL 3891701, at *4 (S.D.N.Y. Sept. 5, 2017); *see In re Massey Energy Co. Sec. Litig.*, 2011 U.S. Dist. LEXIS 111175, at *22-*23 (S.D. W. Va. Sep. 28, 2011) (noting that company acquiring defendant was "not a party to th[e] matter and therefore ha[d] no obligation to retain documents under [the PSLRA]").

Further, North Lane's conclusory statements that "the documents being sought by Plaintiffs are not at all material to the broader litigation" and not "reasonably calculated to lead to the discovery of inadmissible evidence" are incorrect and provide no basis to deny the Motion.  Ex. 19 at 3.  Other than its bald assertion about relevance, North Lane makes no attempt to explain how WNA's documents are not relevant.  *See Green v. Cosby*, 314 F.R.D. 164, 171 (E.D. Pa. 2016) ("'[D]iscovery need not be admissible in evidence to be discoverable.' Relevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"); *Royal Ahold*, 220 F.R.D. at 251 n.13 (finding parties' disagreement regarding relevancy of documents "only reinforces the plaintiffs' argument that the defendants' preservation efforts may not be an adequate substitute for discovery aimed at revealing the case's key facts to the lead plaintiffs").

To be sure, as set out in Plaintiffs' Motion, WNA is central to Plaintiffs' claims because Wirecard used WNA's financials to divert the public's attention from its questionable accounting practices.  Wirecard also represented that the Asian subsidiaries in question were "used for activities connected to the acquisition of [WNA] in the USA." Ex. 5 at 57-58; Ex. 4 at 185 (same).

- 6 -

Further, the relationship between WNA and Wirecard is necessary for establishing personal jurisdiction in this District.[4]

#### D. The North Lane Letter Supports a Showing of Both Undue Prejudice and that Discovery Is Necessary to Preserve Evidence

North Lane does not and cannot dispute that the PSLRA allows for lifting the discovery stay where: (i) discovery is necessary to preserve evidence; or (ii) to prevent undue prejudice to that party. 15 U.S.C. §78u-4(b)(3)(B). Instead, North Lane repeatedly assures that "there is no concern, imminent or otherwise, that any documents will be destroyed," "[t]here is not the slightest possibility of document deletion in the instant case" and "any and all pertinent company documents are being preserved." Ex. 19 at 2-3. As detailed below, however, the North Lane Letter provides additional examples of how the "shifting corporate landscape" has already created concrete concerns about evidentiary loss. *Royal Ahold*, 220 F.R.D. at 251. Given the lack of clarity surrounding the Retention Policy, the Court should lift the PSLRA stay. *See id.* ("[P]laintiffs are not required to rely on the assurances of counsel that relevant evidence will be preserved. The PSLRA permits them to seek discovery to aid their efforts to preserve the evidence for themselves.").

#### 1. Immediate Lift of the Discovery Stay Is Warranted to Preserve Documents During WNA's Sale to Syncapay

The Retention Policy only heightens Plaintiffs' concern that lifting the stay is necessary to preserve evidence. Perhaps most concerning is that the Retention Policy is dated October 30, 2020

---

[4] Statements made in the Williams Affidavit raise concern regarding Ms. Williams' personal knowledge of the topics on which she speaks. For example, the Williams Affidavit represents that "Wirecard AG has no operations in North America." Williams Affidavit, ¶26. This representation directly contradicts Wirecard's own statements made in its annual report that "Wirecard has expanded its global presence in its core business of payment processing into the North American market" and that one of Wirecard's "five key locations" globally was its location in Conshohocken, Pennsylvania. Wirecard Annual Report 2018, 32, 132 (Apr. 25, 2019) https://tinyurl.com/vw5lsre.

4818-5537-7620.v1

– just days after the announcement of WNA's sale to Syncapay.  Retention Policy at 2.  In addition, it was last updated on December 4, 2020 – many weeks after North Lane received Plaintiffs' Motion.  *Id.*  Plaintiffs are left to guess what policies were previously in place.

*Massey* is instructive here.  In *Massey*, the plaintiffs sought discovery from a company being acquired by another.  The court found that the acquisition "constitutes an extraordinary circumstance which might result in the inadvertent destruction of documents to the extent that [the acquired company], which is no longer in operation, may have warehoused relevant documents leaving them unattended and subject to loss or destruction over time."  *Massey*, 2011 U.S. Dist. LEXIS 111175, at *23.  The court, granting the motion to lift the stay, reasoned that as the "operations changed hands [the documents] might be discarded as having no bearing upon [the acquiring company's] operations or subject to any document retention policy which [the acquiring company] may have in place."  *Id.*

Here, North Lane has provided no assurances or facts sufficient to give the Court confidence that it knows: (i) what documents have been acquired from WNA; (ii) where they are located; or (iii) what specific steps have been taken to preserve those documents.  Indeed, because of the criminal investigations and litigation surrounding the circumstances of Wirecard's epic implosion, WNA – now North Lane – would and should have been on notice that it is required to preserve all relevant documents.  *See In re Mushroom Direct Purchaser Antitrust Litig.*, 2012 U.S. Dist. LEXIS 204641, at *51-*52 (E.D. Pa. Aug. 1, 2012) (noting that an affiliated corporation may have a duty to preserve documents where "'the litigating corporation had acted with its sister in effecting the transaction giving rise to suit'"); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-17 (S.D.N.Y. 2003) (finding duty to preserve can arise before the filing of a complaint when almost everyone likely to possess relevant documents knew a lawsuit was likely going to be filed in the future).

More importantly, ambiguities surrounding the Retention Policy and Williams Affidavit illustrate that WNA's documents may have been or will be lost during the transfer of ownership to Syncapay.[5]  The Williams Affidavit states that "[t]he Document Retention Policy will remain even through an acquisition, including a sale to Syncapay," but it does not confirm that North Lane currently possesses WNA's documents or explain what will happen to WNA's documents upon the completion of the company's sale to Syncapay.  Williams Affidavit, ¶20.  Although the Williams Affidavit claims that "[s]ome of the documents [requested by Plaintiffs] would not exist or be in possession of North Lane," it fails to identify which categories of documents would not be in North Lane's possession.  Williams Affidavit, ¶22.  North Lane cannot maintain both that "there is no threat of anything approaching irreparable harm" but also state that it is possible that it does not possess the documents that Plaintiffs seek.  *Id*. at 3.  These uncertainties demonstrate that Plaintiffs face a real risk of evidentiary loss.  *See Massey*, 2011 U.S. Dist. LEXIS 111175, at *22-*23.

### 2.    The Retention Policy Suggests Critical Financial and Legal Documents May Have Already Been Destroyed or that Destruction Is Imminent

North Lane's Retention Policy raises further concerns regarding the preservation of critical information relating to WNA's budgets and forecasts.  Such documents are directly relevant to Plaintiffs' case because they bear on Wirecard's allegedly improper accounting and false reporting of the entire business' revenues and are relevant to jurisdiction over Defendants.  The very first category of documents Plaintiffs identify in their Motion is: "All documents concerning WNA's financial results, including all financial statements, balance sheets and cash flow statements, and

---

[5]    The North Lane Letter and exhibits do not make clear whether the sale of WNA, which requires involvement from Wirecard's insolvency proceeding in Germany, has closed.  *See* Ex. 19; Retention Policy; Policy Addendum; Williams Affidavit.

4818-5537-7620.v1

all documents concerning profit and loss, for the time period January 1, 2015 to the present." Motion at 11. The Williams Affidavit confirms that she read this request. Williams Affidavit, ¶18. According to the Policy Addendum, however, this very category of documents need only be retained for five years:



| Full Retention ▼ | Record Title ▼ | Record Description ▼ |
|---|---|---|
| 5 yrs | Budgets and Financial Forecasts | Records related to internal planning and financial management, including records of North Lane Technologies income, expenses, and cash flow on a monthly, quarterly, and annual basis. |

Policy Addendum.

This Retention Policy, read in conjunction with the Williams Affidavit provides no clarity regarding whether North Lane will preserve this category of documents that explicitly falls within Plaintiffs' requests. Confusingly, the Williams Affidavit notes that "North Lane will not delete records at least until the retention period has been met," which suggests that the documents may still be destroyed. Williams Affidavit, ¶10. However, it also assures that "[a] Litigation Hold has been issued . . . and no records are to be deleted." *Id*., ¶17. Plaintiffs and the Court are left to guess which applies.

Moreover, the Williams Affidavit does not state when North Lane issued the Litigation Hold nor what documents are encompassed by the Hold. North Lane touts its "permanent" hold related to documents concerning litigation, yet the Policy Addendum suggests this category only encompasses a limited set of dispositive "[m]otions; [j]udgements and other [s]ettlement [d]ocuments." Ex. 19 at 3; Policy Addendum; Williams Affidavit, ¶¶12-14. Elsewhere in the Policy Addendum, "[r]ecords related to government inquiries and regulatory proceedings of any type" and "[r]ecords related to claims and litigation" have a seven-year retention period. *See*

4818-5537-7620.v1

Policy Addendum.  Allegations in Plaintiffs' complaint date back to 2015, and there is a very real possibility that a motion to dismiss will not be decided until 2022.  These contradictions throughout the Retention Policy and Williams Affidavit show that destruction is not only likely but also imminent.  *See Winer Family Tr. v. Queen*, 2004 WL 350181, at *2 (E.D. Pa. Feb. 6, 2004) ("A party alleging that discovery is necessary to preserve evidence is required to make a specific showing that 'the loss of evidence is imminent as opposed to merely speculative.'").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that the Court deny North Lane's request and grant Plaintiffs' Motion to lift the PSLRA discovery stay so that Plaintiffs may seek discovery from WNA or its successor companies.

DATED:  December 17, 2020                    Respectfully submitted,

                                             SAXTON & STUMP
                                             LAWRENCE F. STENGEL (P.A. Bar # 32809)


                                                 s/ Lawrence F. Stengel
                                             LAWRENCE F. STENGEL

                                             280 Granite Run Drive, Suite 300
                                             Lancaster, PA  17601
                                             Telephone:  717/556-1000
                                             717/441-3810 (fax)
                                             lfs@saxtonstump.com

                                             *Local Counsel for Lead Plaintiffs*

- 11 -

4818-5537-7620.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
JOHN H. GEORGE
HADIYA K. DESHMUKH
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
jgeorge@rgrdlaw.com
hdeshmukh@rgrdlaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
DANIELLE SMITH
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
danielles@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVEN W. BERMAN
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com

*Lead Counsel for Lead Plaintiffs Thanh Sam and
Lawrence Gallagher*

BRONSTEIN, GEWIRTZ & GROSSMAN,
LLC
PERETZ BRONSTEIN
60 East 42nd Street, Suite 4600
New York, NY  10165
Telephone:  212/697-6484
212/697-7296 (fax)
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Thanh Sam*

- 12 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on December 17, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Lawrence F. Stengel
LAWRENCE F. STENGEL

SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)
E-mail:  lfs@saxtonstump.com

# Mailing Information for a Case 2:20-cv-03326-AB BROWN v. WIRECARD AG et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **LEE ALBERT**
  lalbert@glancylaw.com,lee-albert-5832@ecf.pacerpro.com,info@glancylaw.com

- **PERETZ BRONSTEIN**
  peretz@bgandg.com

- **VINCENT A COPPOLA**
  vcoppola@pribanic.com,gregory@pribanic.com

- **HADIYA K. DESHMUKH**
  hdeshmukh@rgrdlaw.com,hdeshmukh@ecf.courtdrive.com

- **JOHN H. GEORGE**
  jgeorge@rgrdlaw.com,jgeorge@ecf.courtdrive.com,smorris@ecf.courtdrive.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **REED KATHREIN**
  reed@hbsslaw.com,lisal@hbsslaw.com,sf_filings@hbsslaw.com

- **JEFFREY L. KODROFF**
  jkodroff@srkattorneys.com

- **WILLIAM S. NORTON**
  bnorton@motleyrice.com,mhickey@motleyrice.com

- **MICHAEL J. QUIRK**
  mquirk@motleyrice.com,hfonseca@motleyrice.com,lmandara@motleyrice.com

- **DANIELLE SMITH**
  danielles@hbsslaw.com,sf_filings@hbsslaw.com

- **LAWRENCE F. STENGEL**
  lfs@saxtonstump.com,gas@saxtonstump.com

- **DAVID A. STRAITE**
  dstraite@kaplanfox.com,jgriffin@kaplanfox.com

- **SHAWN A. WILLIAMS**
  shawnw@rgrdlaw.com,smorris@rgrdlaw.com,e_file_sd@rgrdlaw.com,shawnw@ecf.courtdrive.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)