UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re WIRECARD AG SECURITIES LITIGATION | ) ) ) ) | Civ. Action No. 2:20-cv-03326-AB |
| | | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) ) ) ) | LEAD PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND |
| ALL ACTIONS. | | AUTHORITIES IN SUPPORT OF PERSONAL JURISDICTION #64 |

4882-1278-5512.v3

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     RELEVANT PROCEDURAL BACKGROUND................................................2

III.    FACTS DEVELOPED SINCE BRIEFING SUBMITTED..................................3

        A.      EY Germany Auditors Made an In-Person Site Visit to Pennsylvania in
                December 2017 to Direct the Audit for Wirecard North America .........................3

        B.      EY Germany Had a Direct Role in Auditing Wirecard North America ................7

        C.      February 2023 *The New Yorker* Article Concerning Suspicious Behavior
                at Wirecard North America's Prepaid Card Services ............................................10

IV.     LEGAL STANDARDS ......................................................................................10

V.      ARGUMENT......................................................................................................11

        A.      EY Germany Purposefully Availed Itself of the Forum of the U.S.......................11

                1.      EY Germany Made a Site Visit to Wirecard North America in
                        December 2017 in Connection With Its Audit of Wirecard .....................12

                2.      EY Germany Engaged EY U.S. to Audit Wirecard North America..........14

                3.      EY Germany Controlled EY U.S.' Auditing Work of Wirecard
                        North America ...........................................................................................15

                4.      EY Germany Performed Auditing Work Directly on Wirecard
                        North America ...........................................................................................17

        B.      EY Germany's Contacts with the U.S. in Relation to Its Audit of Wirecard
                North America Have a Strong Relationship to Plaintiffs' Fraud Claims...............18

                1.      Discovery Regarding the 2017 Site Visit Confirms Plaintiffs'
                        Allegations that Wirecard North America was Related to the
                        Alleged Fraud............................................................................................19

                2.      The Acquisition of Wirecard North America Was Integral to
                        Wirecard Group's Global Operations and Expansion Ambitious.............21

        C.      EY Germany Knew U.S. Investors Would Rely Upon Its Audit Opinions...........23

VI.     EXERCISING JURISDICTION OVER EY GERMANY PROMOTES THE
        POLICY OF PREVENTING FOREIGN ENTITIES FROM CONDUCTING
        FRAUD ON U.S. SOIL .....................................................................................25

VII.    CONCLUSION...................................................................................................26

# TABLE OF AUTHORITIES

Page

## CASES

*Action Mfg. Co. v. Simon Wrecking Co.*,
  375 F. Supp. 2d 411 (E.D. Pa. 2005) ....................................................................................11

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)........................................................................................................10, 12, 17

*Carteret Sav. Bank, FA v. Shushan*,
  954 F.2d 141 (3d Cir. 1992).................................................................................................12

*Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*,
  683 F. Supp. 1463 (S.D.N.Y. 1988)....................................................................................12

*Dole v. Arco Chem. Co.*,
  921 F.2d 484 (3d Cir. 1990)..................................................................................................4

*First Am. Corp. v. Price Waterhouse LLP*,
  988 F. Supp. 353 (S.D.N.Y. 1997),
  *aff'd*, 154 F.3d 16 (2d Cir. 1998) .......................................................................................15

*Foman v. Davis*,
  371 U.S. 178 (1962)..............................................................................................................4

*Ford Motor Co. v. Mont. Eighth Jud. D. Ct.*,
  _ U.S. _, 141 S. Ct. 1017 (2021)................................................................................ *passim*

*Gen. Elec. Co. v. Deutz AG*,
  270 F.3d 144 (3d Cir. 2001).............................................................................................13, 18

*Hepp v. Facebook*,
  14 F.4th 204 (3d Cir. 2021) ....................................................................................... *passim*

*In re Isostatic Graphite Antitrust Litig.*,
  2002 WL 31421920 (E.D. Pa. Sept. 19, 2002) ....................................................................16

*In re Magnetic Audiotape Antitrust Litig.*,
  334 F.3d 204 (2d Cir. 2003)................................................................................................11

*Laurel Gardens, LLC v. Mckenna*,
  948 F.3d 105 (3d Cir. 2020)................................................................................................25

*Leasco Data Processing Equip. Co. v. Maxwell*,
  468 F.2d 1326 (2d Cir. 1976)..............................................................................................12

*Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*,
  960 F.2d 1217 (3d Cir. 1992).........................................................................................11, 14

*Metcalfe v. Renaissance Marine, Inc.*,
566 F.3d 324 (3d Cir. 2009)..........................................................................................11

*Mucha v. Volkswagen Aktiengesellschaft*,
540 F. Supp. 3d 269 (E.D.N.Y. 2021),
*aff'd sub nom*. *Mucha v. Winterkorn*, 2022 WL 774877 (2d Cir. Mar. 15, 2022)...................25

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
496 F.3d 312 (3d Cir. 2007)....................................................................................14, 17

*OmniWind Energy Sys., Inc. v. Redo*,
2015 WL 790101 (E.D. Pa. Feb. 24, 2015) .................................................................25

*Pinker v. Roche Holdings Ltd.*,
292 F.3d 361 (3d Cir. 2002)........................................................................................24

*Rivera v. Bally's Park Place, Inc.*,
798 F. Supp. 2d 611 (E.D. Pa. 2011) ...........................................................................17

*Rogers v. Smith Volkswagen*,
2020 WL 1676400 (E.D. Pa. Apr. 6, 2020) .................................................................11

*Victaulic Co. v. HiTherm, LLC*,
2022 WL 2953690 (E.D. Pa. July 26, 2022).................................................................12

*Walden v. Fiore*,
571 U.S. 277 (2014)....................................................................................................12

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
Rule 54(b) ...........................................................................................................................1

## I.    INTRODUCTION[1]

Pursuant to the Court's February 9, 2023 Order (ECF 95) granting Plaintiffs' motion for reconsideration and request for jurisdictional discovery (ECF 90), Plaintiffs submit this supplemental brief in support of their opposition to EY Germany's motion to dismiss the Complaint for lack of personal jurisdiction (ECF 76) ("Opposition" or "Opp.").  Since filing the Complaint and submitting their Opposition, Plaintiffs have uncovered numerous additional facts and documents that further support Plaintiffs' position that this Court can and should exercise jurisdiction over EY Germany.  These new facts show not only EY Germany's **physical presence** in the U.S., in connection with audit work it did on behalf of Wirecard, but also that EY Germany in fact directed substantive auditing activities toward the U.S. – and further that those activities are related to Plaintiffs' alleged fraud.



---

[1]    All terms not defined herein have the same meaning as in Lead Plaintiffs' Motion for Reconsideration of Order #88 (Granting Motion to Dismiss for Lack of Personal Jurisdiction) or, in the Alternative, for Entry of Judgment Pursuant to Fed. R. Civ. P. 54(b) (ECF 90).

4882-1278-5512.v3



EY Germany's contacts with and conduct in the U.S. in its capacity as group auditor of Wirecard, in conjunction with EY Germany's contemporaneous knowledge of American investors in Wirecard securities, including that Wirecard's largest shareholders were based out of the U.S. (making it more likely that U.S. investors would rely upon EY Germany's audit opinions), renders exercise of jurisdiction entirely appropriate.

## II.    RELEVANT PROCEDURAL BACKGROUND

On December 8, 2022, the Court issued an Order granting EY Germany's motion to dismiss for lack of personal jurisdiction.  ECFs 86-87.  The Court found Plaintiffs had not demonstrated EY Germany's purposeful availment of the forum (*i.e.*, the U.S.).  ECF 87 at 11.  Specifically, based on the then-current record, the Court first found that "EY Germany auditors could not have known about the use of their audits by American investors simply because their audits were later placed on Wirecard's website in English, where they might be read by American investors."  *Id.* at 16-18.  The Court then found, based on the facts before it, that EY Germany "was not involved in the direct auditing of Wirecard North America – that was the work of EY U.S., which EY Germany assisted in reviewing one step further removed."  *Id.* at 18.  The Court concluded: "The fact that EY Germany reviewed work by EY U.S. in the course of conducting Group audits pursuant to German and international auditing standards still does not sufficiently constitute

4882-1278-5512.v3

purposeful availment such that EY Germany would expect to be haled into a United States court." *Id.*

On December 22, 2022, Plaintiffs moved for reconsideration of the Court's motion to dismiss Order, and, specifically, the denial of Plaintiffs' request for jurisdictional discovery. ECF 90. On February 9, 2023, the Court granted Plaintiffs' motion for reconsideration and vacated the order granting EY Germany's motion to dismiss for lack of personal jurisdiction. ECF 95 at 1. Further, the Court granted "Plaintiffs' request to seek jurisdictional discovery from EY Germany" and ordered supplemental briefing "on the issue of personal jurisdiction." *Id.* at 2.

## III.    FACTS DEVELOPED SINCE BRIEFING SUBMITTED

### A.    EY Germany Auditors Made an In-Person Site Visit to Pennsylvania in December 2017 to Direct the Audit for Wirecard North America



---

[2]    All "Ex. _" citations herein are to the Declaration of Shawn A. Williams in Support of Lead Plaintiffs' Supplemental Memorandum of Points and Authorities in Support of Personal Jurisdiction #64, filed concurrently herewith, unless otherwise indicated. All "¶_" references herein are to the Complaint unless otherwise indicated.

4882-1278-5512.v3



<hr />

3   While Plaintiffs named Susanne Steidl ("Steidl") as one of the Individual Defendants in the Complaint, she, and Individual Defendants Jan Marselek, Burkhard Ley, Alexander von Knoop, and Wulf Matthias were dismissed for lack of service.  ECF 86.

4   After the parties submitted their initial round of briefing on EY Germany's motion to dismiss, *Financial Times* reporter, Dan McCrum, who broke news of the Wirecard fraud to the public and whose reporting the Complaint extensively cites, published a book titled "Money Men: A Hot Startup, a Billion-Dollar Fraud, a Fight for the Truth" (2022) ("Money Men"), which further details his investigation and findings into Wirecard and EY Germany.  This Supplemental Memorandum submits additional facts from the book, as well as from other reports subsequently published, to support the Court's exercise of jurisdiction.  To the extent the Court finds it necessary, Plaintiffs respectfully request leave to amend the Complaint to plead these facts.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (liberal granting of leave to amend "ensures that a particular claim will be decided on the merits rather than on technicalities").  All citations and footnotes omitted and emphasis added unless otherwise indicated.



In Money Men, McCrum specifically referenced Kurniawan and EY Germany's visit to Philadelphia:

> [Kurniawan] had a knack for one of his most important jobs: charming the auditors at Ernst & Young.  In December [2017], the lead audit partner from EY Germany, Andreas Loetscher, flew into Chennai for a two-day site visit at Hermes to better understand what was going on.  Afterwards, he wrote to Kurniawan to thank him for the 'preparation, discussions, explanation and entertainment', while a colleague requested 'local cuisine' **for their trip to the Wirecard office in Philadelphia** the

---

5    The PPA is an application of goodwill accounting whereby one company (the acquirer), when purchasing a second company, allocates the purchase price into various assets and liabilities acquired from the transaction.

following week.  The ever-present Kurniawan made it to there as well, taking the auditors to a tourist trap where the waiting staff dressed as pilgrims.  Whether it was the food or the company, the EY men once again flew home happy.



---

[6]    During the jurisdictional discovery period, on April 3, 2023, the German accounting regulator, Apas, issued an unprecedented ruling against EY Germany, banning it from taking on new public company clients for two years, due to its "'violations of professional duties during the audits of Wirecard.'"  Ex. 9.  Apas also fined EY Germany €500,000, and five current and former employees between €23,000 and €300,000.  *Id.*  An internal email in the wake of the Apas decision from Andy Baldwin, EY Global Managing Partner, explained: "'This has been a deeply challenging chapter for our organization, and for EY Germany in particular . . . .  It is not an audit EY Germany is proud of.'"  *Id.*

[7]    According to McCrum's account in Money Men, there is reason to believe that EY Germany knew of these expectations earlier than December 2017: "***By early 2017***, [Kurniawan] was marked out for promotion and showing his dedication by jetting back and forth across the globe while his heavily pregnant wife waited at home: to Chennai; ***the US, where Wirecard was buying the prepaid card operations of Citigroup***; and Singapore, where Kurniawan joked there was no need to pay for a hotel given the amount of time he spent in the office."  Ex. 5 at 136-37.

4882-1278-5512.v3



**B.      EY Germany Had a Direct Role in Auditing Wirecard North America**

<hr />

[9]    Defendant Wirecard acted as an "acquirer," which is the entity that collects money from an "issuer" (the bank that issues a customer's credit card) and distributes it to the merchant that charged the customer's card.  Payment processors like Wirecard make money by taking a relatively small portion of each transaction processed.  ¶35.

4882-1278-5512.v3



4882-1278-5512.v3



- 9 -

### C. February 2023 *The New Yorker* Article Concerning Suspicious Behavior at Wirecard North America's Prepaid Card Services

Beyond discovery from EY Germany, a February 2023 article in *The New Yorker* reported on questionable activities related to the sale of prepaid cards occurring at Wirecard's Pennsylvania location. *The New Yorker* article recounts a story from a hedge fund manager, Fahmi Quadir ("Quadir"), who visited the Pennsylvania site in early 2019. Ex. 24. Quadir first noted that acquiring Citigroup's North American prepaid card services "was a reckless move: if [Wirecard] was committing crimes, they would now be taking place on American soil." *Id.* Quadir also told *The New Yorker* that upon her arrival at the Pennsylvania site, a Wirecard North America representative "offered to sell them prepaid cards loaded with up to a hundred and fifty thousand dollars, and added that it would be perfectly acceptable for them to distribute the cards to other people." *Id.* Quadir told *The New Yorker* that she was shocked because generally: "'You can't find prepaid cards loaded with more than ten thousand dollars on the dark Web.'" *Id.* Quadir had a working theory that "the [C]ompany's primary business purpose was to serve organized criminal networks and Russian oligarchs . . . for 'large-scale money laundering operations.'" *Id.*

## IV. LEGAL STANDARDS

To establish specific jurisdiction over a defendant, "[t]here are two prongs." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). "First, there must be purposeful availment: minimum contacts with the forum . . . that show the defendant took a deliberate act reaching out to do business in that state." *Id.* "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person'" and the defendant "'should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). "'[E]ven one contact with the forum may be enough to justify jurisdiction as

- 10 -

long as the other criteria are met.'" *Rogers v. Smith Volkswagen*, 2020 WL 1676400, at *4 (E.D. Pa. Apr. 6, 2020). "Second, the contacts must give rise to – or relate to – plaintiff's claims." *Hepp*, 14 F.4th at 207. As the Supreme Court clarified in *Ford Motor Co. v. Mont. Eighth Jud. D. Ct.*, _ U.S. _, 141 S. Ct. 1017 (2021), the second prong is not a "causation" requirement, rather, it requires some "strong 'relationship among the defendant, the forum, and the litigation.'" *Id.* at 1028.

At the motion to dismiss stage, a "'plaintiff[] need only establish a *prima facie* case of personal jurisdiction'" and the "'court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). "Where plaintiff has engaged in jurisdictional discovery, but no evidentiary hearing was conducted, 'the plaintiff[s'] *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, ***if credited*** . . . would suffice to establish jurisdiction over the defendant.'" *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (alteration in original); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411 (E.D. Pa. 2005). "'Once the plaintiff has made out a *prima facie* case in favor of personal jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."'" *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

## V.    ARGUMENT

### A.    EY Germany Purposefully Availed Itself of the Forum of the U.S.

The evidence produced in jurisdictional discovery demonstrates that EY Germany made "minimum contacts with the forum . . . that show the defendant took a deliberate act reaching out to do business in" the U.S. *Hepp*, 14 F.4th at 207; ECF 87.

### 1. EY Germany Made a Site Visit to Wirecard North America in December 2017 in Connection With Its Audit of Wirecard

Discovery has revealed that in December 2017, EY Germany made an in-person site visit to Wirecard North America. ████████████████████ "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the [forum] – either by the defendant in person or through an agent, goods, mail, or some other means – is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Burger King*, 471 U.S. at 476.

In this case, EY Germany's site visit to the U.S. establishes the requisite minimum contacts for the Court's exercise of personal jurisdiction. In *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 683 F. Supp. 1463 (S.D.N.Y. 1988), like here, the court addressed claims under §10(b) of the Securities Exchange Act of 1934, and like here, against foreign auditors affiliated with a U.S. firm. Specifically, in light of *Leasco Data Processing Equip. Co. v. Maxwell*, 468 F.2d 1326 (2d Cir. 1976), the court found that because the foreign auditors traveled to the U.S. "to transact business related to the audit of the [client] entities, they are subject to this court's jurisdiction." *Econ. Dev.*, 683 F. Supp. at 1471 n.6; *see* ECF 87 at 11, 19.



Courts in this District have found that similar business visits are sufficient to support personal jurisdiction over a foreign defendant under *Hepp* and *Ford*. *See Victaulic Co. v. HiTherm, LLC*, 2022 WL 2953690, at *2 (E.D. Pa. July 26, 2022). Even a single visit may suffice. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 147 (3d Cir. 1992).

4882-1278-5512.v3



- 13 -

### 2. EY Germany Engaged EY U.S. to Audit Wirecard North America

 EY Germany directly engaged and directed EY U.S.' audit of Wirecard North America. *See Hepp*, 14 F.4th at 207 (facts showing the "defendant took a deliberate act reaching out to do business in that state" sufficient to satisfy minimum contacts).

In its prior ruling, the Court found that Plaintiffs' allegations relating to EY Germany's relationship with EY U.S. were insufficient to establish purposeful availment and that "[w]ithout more, such allegations would subject foreign auditors to jurisdiction solely because of their role as a primary auditor of a company that has multinational subsidiaries that are audited by local auditors." ECF 87 at 18. In reaching this conclusion, the Court relied upon the sworn Streyl declaration that EY Germany did not "perform[] any audit procedures on Wirecard North America's accounts, except for those procedures required for the primary auditor in the course of a Group audit, *i.e.* critical review of the interoffice reporting to EY Germany" (ECF 64-3, ¶12) to conclude that "EY Germany was not ***directly*** involved in auditing Wirecard North America" (ECF 87 at 18).

4882-1278-5512.v3



### 3. EY Germany Controlled EY U.S.' Auditing Work of Wirecard North America

. Other courts have found that

when a foreign auditor "conduct[s] the U.S. portion of its worldwide audit" through an affiliate

and:

> [I]ssued detailed instructions on how the audit should be conducted, identified specific areas of inquiry and dictated the form and manner in which [the U.S. affiliate] would report its findings . . . it lends its weight to a determination that personal jurisdiction may be imposed over [the foreign auditor] based on its activities in the United States conducted through [the U.S. affiliate].

*First Am. Corp. v. Price Waterhouse LLP*, 988 F. Supp. 353, 363 (S.D.N.Y. 1997), *aff'd*, 154 F.3d

16 (2d Cir. 1998).





4882-1278-5512.v3



**4.    EY Germany Performed Auditing Work Directly on Wirecard North America**





**B.**    **EY Germany's Contacts with the U.S. in Relation to Its Audit of Wirecard North America Have a Strong Relationship to Plaintiffs' Fraud Claims**



- 18 -



     **1.**       **Discovery Regarding the 2017 Site Visit Confirms Plaintiffs'
Allegations that Wirecard North America was Related to the
Alleged Fraud**



---

[12] Beyond the auditing issues discussed at the site visit, and consistent with reports that Kurniawan had "a knack for . . . charming the auditors at Ernst & Young," Kurniawan and Loetscher enjoyed the local Pennsylvania sites, where they attended "a tourist trap where the waiting staff dressed as pilgrims."  Ex. 5 at 154.

4882-1278-5512.v3



    **2.**    **The Acquisition of Wirecard North America Was Integral to Wirecard Group's Global Operations and Expansion Ambitious**





As part of the global growth strategy, Wirecard is striving to establish a worldwide network of service and technology locations. Through the acquisition of the prepaid card business of Citigroup in the USA and the customer portfolio for card acceptance of Citigroup in the AsiaPacific region (APAC), the Wirecard Group has come a significant step closer to realising this vision. These two transactions significantly extend the company's geographical reach and also the available licensing framework. In future, the goal is to further expand the existing licences for the issuing of card instruments and payment acceptance in selected countries and to push forward the expansion of our digital platform solution.

ECF 76-2 at 61.

███████████████████████████████████

████████████████████████████████████, hedge fund manager Quadir's

account of her encounter with the Wirecard North America salesperson, as reported in *The New*

*Yorker*, as well as Money Men and discussed *supra* at §III.C., raises questions about the manner

in which the Company was using prepaid cards to perpetuate its fraudulent activities. In Money

Men, McCrum commented that "[w]hat the salesman was proposing would be a license for

- 22 -

[Quadir] to launder money, avoid taxes, run a drug gang – anything cash-rich and attention shy."

Ex. 5 at 226.



C.    **EY Germany Knew U.S. Investors Would Rely Upon Its Audit Opinions**

The evidence of contacts discussed above relating to EY Germany's auditing activities in the U.S. are sufficient to establish jurisdiction.  Because the Court "should look at the extent to which [EY Germany] . . . 'could reasonably anticipate being involved in litigation in the United

- 23 -

States,'" the Court should also view the facts discovered in the context of EY Germany's knowledge that U.S. investors would rely upon its audit opinions. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 370 (3d Cir. 2002). As this Court recognized in its motion to dismiss Order, a foreign auditor may be subject to U.S. jurisdiction if the foreign auditor "reviewing audits and financial statements would know or have reason to know that the company's stocks were traded in the U.S. market and that reports would be made available to the American investing public." ECF 87 at 15 (citing cases). EY Germany has now admitted precisely these facts. More than a year prior to the close of the Class Period (June 26, 2020), and before EY Germany made its allegedly false and misleading April 25, 2019 statements, ¶¶319-322, EY Germany **knew** "ADRs and F-shares traded in the United States," and it knew that its reports were available on the Internet in English, and hence reliance by U.S. investors was foreseeable. Ex. 2 at 4-6.

Here, EY Germany knew not only that Wirecard AG had U.S.-based investors, but also that those investors held significant amounts of Wirecard shares and therefore, almost certainly would have relied upon the audit opinions issued in connection with the Company's annual reports.

Throughout the Class Period, Wirecard reported in its annual reports that most of its shares were held by "institutional investors from the Anglo-American region and Europe." ¶38; Ex. 35 at 44; Ex. 33 at 42; ECF 76-2 at 34; Ex. 36 at 27. Also, in each annual report during the Class Period, Wirecard reported which shareholders held more than 3% of the Company's voting rights, and then specified in which country that shareholder was based. For example, in the 2017 annual report, "BlackRock Inc (US)" is listed with 5.12% voting rights, "Artisan Partners LP (US)" with 4.99%, and "Citigroup Inc (US)" with 4.93%. ECF 76-2 at 35; *see also* Ex. 35 at 45 ("T. Row Price Group Inc. (US)"); Ex. 33 at 43 ("Citigroup Inc (US)," "Artisan Partners LP (US)"; "T. Rowe Price Group, Inc. (US)"); Ex. 36 at 28 ("BlackRock Inc (US)," "Citigroup Inc (US)," "Artisan

Partners Asset Management Inc. (US)").  U.S.-based investors consistently comprised the largest members of Wirecard's shareholder base.

And EY Germany, in its audit opinions, confirmed that it had reviewed these disclosures related to Wirecard's large U.S. shareholders; therefore, EY Germany knew that Wirecard had large U.S.-based investors.  ECF 76-2 at 295 (EY Germany audit letter explaining review of "Wirecard stock" disclosures that discussed U.S. investors at p. 35); *see also* Ex. 36 at 223 (EY Germany audit letter explaining review of "Wirecard stock" disclosures that discussed U.S. investors at p. 28).

EY Germany's recent admissions, along with the representations in the audit opinions discussed above "suggest[] [EY Germany] knew that U.S. investors would rely upon them," further supporting the Court's personal jurisdiction over Plaintiffs' claims.  *Mucha v. Volkswagen Aktiengesellschaft*, 540 F. Supp. 3d 269, 285 (E.D.N.Y. 2021), *aff'd sub nom. Mucha v. Winterkorn*, 2022 WL 774877 (2d Cir. Mar. 15, 2022).

## VI.    EXERCISING JURISDICTION OVER EY GERMANY PROMOTES THE POLICY OF PREVENTING FOREIGN ENTITIES FROM CONDUCTING FRAUD ON U.S. SOIL

The Court's exercise of personal jurisdiction here comports with traditional notions of fair play and substantial justice because EY Germany "ha[s] had a course of dealing with" Wirecard North America, "a Pennsylvania corporation, such that the burden of defending here is not oppressive."  *OmniWind Energy Sys., Inc. v. Redo*, 2015 WL 790101, at *9 (E.D. Pa. Feb. 24, 2015).  The U.S., as the forum, "has an interest in adjudicating this dispute in which [U.S.] residents allege a non-resident person and corporation have . . . engaged in fraud.  Plaintiffs have an interest in obtaining convenient and effective relief as, according to their complaint, they have been defrauded by defendants and are owed substantial funds."  *Id.*; *see also Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 122 (3d Cir. 2020).

- 25 -

## VII.    CONCLUSION

For the foregoing reasons, in addition to those reasons set forth in Plaintiffs' Opposition, Plaintiffs respectfully request that the Court deny EY Germany's motion to dismiss.

DATED:  June 7, 2023                              Respectfully submitted,

                                                 SAXTON & STUMP
                                                 LAWRENCE F. STENGEL (P.A. Bar # 32809)


                                                         s/ Lawrence F. Stengel
                                                 _____
                                                         LAWRENCE F. STENGEL

                                                 280 Granite Run Drive, Suite 300
                                                 Lancaster, PA  17601
                                                 Telephone:  717/556-1000
                                                 717/441-3810 (fax)
                                                 lfs@saxtonstump.com

                                                 *Local Counsel for Lead Plaintiffs*

                                                 SEEGER WEISS LLP
                                                 CHRISTOPHER A. SEEGER
                                                 55 Challenger Road, 6th Floor
                                                 Ridgefield Park, NJ  07660
                                                 Telephone:  212/584-0700
                                                 212/584-0799 (fax)
                                                 cseeger@seegerweiss.com

                                                 *Additional Counsel for Plaintiff*

                                                 ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
                                                 SHAWN A. WILLIAMS
                                                 HADIYA K. DESHMUKH
                                                 JACOB G. GELMAN
                                                 Post Montgomery Center
                                                 One Montgomery Street, Suite 1800
                                                 San Francisco, CA  94104
                                                 Telephone:  415/288-4545
                                                 415/288-4534 (fax)
                                                 shawnw@rgrdlaw.com
                                                 hdeshmukh@rgrdlaw.com

4882-1278-5512.v3

HAGENS BERMAN SOBOL SHAPIRO LLP
REED R. KATHREIN
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVEN W. BERMAN
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com

*Lead Counsel for Lead Plaintiffs Thanh Sam and Lawrence Gallagher*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
PERETZ BRONSTEIN
60 East 42nd Street, Suite 4600
New York, NY  10165
Telephone:  212/697-6484
212/697-7296 (fax)
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Thanh Sam*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on June 7, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<div style="margin-left:50%">

s/ Lawrence F. Stengel

LAWRENCE F. STENGEL
SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)
E-mail:  lfs@saxtonstump.com

</div>

# Mailing Information for a Case 2:20-cv-03326-AB IN RE: WIRECARD AG SECURITIES LITIGATION

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lee Albert**
  lalbert@glancylaw.com,lee-albert-5832@ecf.pacerpro.com,info@glancylaw.com

- **GEORGE A. BORDEN**
  gbprden@wc.com

- **PERETZ BRONSTEIN**
  peretz@bgandg.com

- **Vincent A. Coppola**
  vcoppola@pribanic.com,gregory@pribanic.com

- **HADIYA K. DESHMUKH**
  hdeshmukh@rgrdlaw.com,hdeshmukh@ecf.courtdrive.com

- **STEVEN M. FARINA**
  sfarina@wc.com

- **JACOB G. GELMAN**
  jgelman@rgrdlaw.com

- **JOHN H. GEORGE**
  jgeorge@rgrdlaw.com,jgeorge@ecf.courtdrive.com,smorris@ecf.courtdrive.com

- **JACOB A. GOLDBERG**
  jgoldberg@rosenlegal.com,etexidor@rosenlegal.com

- **REED KATHREIN**
  reed@hbsslaw.com,sf_filings@hbsslaw.com

- **JEFFREY L. KODROFF**
  jkodroff@srkattorneys.com

- **AMANDA MACDONALD**
  amacdonald@wc.com

- **WILLIAM S. NORTON**
  bnorton@motleyrice.com,mhickey@motleyrice.com

- **MICHAEL J. QUIRK**
  mquirk@motleyrice.com,hfonseca@motleyrice.com,lmandara@motleyrice.com

- **LAURENCE MATTHEW ROSEN**
  LRosen@Rosenlegal.com

- **CHRISTOPHER A. SEEGER**
  cseeger@seegerweiss.com,styjer@seegerweiss.com,seegerweiss@myecfx.com,rbarreca@seegerweiss.com,sabrina-tyjer-1389@ecf.pacerpro.com,msheridan@seegerweiss.com,DKekatos@seegerweiss.com,dsparks@seegerweiss.com,abadaruzzaman@seegerweiss.com,dion--kekatos-1017@ecf.pacerpro.com

- **LAWRENCE F. STENGEL**
  lfs@saxtonstump.com,cag@saxtonstump.com,jss@saxtonstump.com

- **DAVID A. STRAITE**
  dstraite@kaplanfox.com

- **Craig Singer**
  csinger@wc.com

- **Danielle Smith**
  danielles@hbsslaw.com,sf_filings@hbsslaw.com

- **SHAWN A. WILLIAMS**
  shawnw@rgrdlaw.com,smorris@rgrdlaw.com,e_file_sd@rgrdlaw.com,jgelman@rgrdlaw.com,shawnw@ecf.courtdrive.com,JGelman@ecf.courtdrive.com

- **WESLEY A. WONG**
  wesleyw@hbsslaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Lucas**            **E Gilmore**
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue    Suite 202
Berkeley, CA 94710